UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

      v.                                             **DECISION AND ORDER**

SHAMAR CHESTER,                          6:17-CR-06151 EAW

      Defendant.

## I.   INTRODUCTION

Pending before the Court is a motion filed by defendant Shamar Chester (hereinafter "Defendant") for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (Dkt. 42).[1] For the reasons set forth below, Defendant's motion is granted.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Defendant is 44 years old and was charged by criminal complaint filed on July 17, 2017, with knowingly failing to register and update a registration as required by the Sex Offender Registration and Notification Act ("SORNA"), in violation of 18 U.S.C. § 2250(a). (Dkt. 1). On November 27, 2017, Defendant appeared before the undersigned, waived indictment, and pleaded guilty pursuant to a plea agreement to failing to register as a sex offender as required by SORNA. (Dkt. 14; Dkt. 15; Dkt. 16; Dkt. 17). Defendant

---

[1] Defendant's motion was filed *pro se*. (Dkt. 42). Thereafter, this District's Federal Public Defender's Office appeared on behalf of Defendant pursuant to the Standing Order Appointing the Federal Public Defender signed by United States Chief District Judge Frank P. Geraci, Jr., on April 7, 2020. *See* Standing Order Appointing the Federal Public Defender, *In re: Section 603(B), First Step Act of 2018* (W.D.N.Y. Apr. 7, 2020), https://www.nywd.uscourts.gov/sites/nywd/files/CR-2020-First%20Step%20Act%20Appt%20of%20FPD.pdf.

admitted that he had been convicted in 2007 in the District of Columbia of Second Degree Child Sex Abuse (Attempted) (Dkt. 16 at ¶ 5(a)), for which he was originally sentenced to prison for 19 months, with a 10 year supervised release term to follow (Dkt. 25 at ¶ 44). The underlying conduct involved sexual intercourse by Defendant when he was approximately 31 years old with a 15 year old, who ultimately became pregnant and delivered a child. (*Id.*). Defendant has a positive relationship with both his child and the mother of his child, and in fact, the mother of Defendant's child wrote a letter on his behalf to the Court at sentencing. (Dkt. 29 at 3). In March 2015, Defendant relocated from the District of Columbia to Rochester, New York, but he failed to update his sex offender registration in New York State. (Dkt. 16 at ¶ 5(b)-(d)). The PSR calculated Defendant's criminal history category as IV (Dkt. 25 at ¶ 47), with Defendant's other prior convictions related to controlled substances offenses, theft offenses, and another failure to register as a sex offender (*id.* at ¶¶ 40-46). The PSR calculated a recommended prison sentence under the Sentencing Guidelines of 21 to 27 months. (*Id.* at ¶ 57).

Defendant was sentenced by the undersigned on April 27, 2018, to a Guidelines sentence of 21 months in prison, to be followed by five years supervised release. (Dkt. 28; Dkt. 30).

On January 18, 2019, Defendant commenced his supervised release term, but shortly thereafter (on July 22, 2019), a petition was filed by the United States Probation Office ("USPO") alleging that Defendant violated the terms and conditions of his supervised release by testing positive for marijuana and cocaine use. (Dkt. 31; *see* Dkt. 35). On October 9, 2019, Defendant pleaded guilty to violating the terms and conditions

of supervised release, and pursuant to an agreement between the parties, Defendant was sentenced to 12 months and 1 day in prison with no supervised release term to follow. (Dkt. 40; Dkt. 41). Defendant is currently housed at Federal Medical Center Devens ("FMC Devens") and he is scheduled to be released from the custody of the Bureau of Prisons ("BOP") on August 16, 2020. *See* Find an Inmate, **Error! Hyperlink reference not valid.**https://www.bop.gov/inmateloc/ (follow "Find By Name" hyperlink; then search first name field for "Shamar" and search last name field for "Chester") (last visited May 28, 2020).

On May 7, 2020, Defendant filed the pending motion for compassionate release.[2] (Dkt. 42). Defendant contends that his request for release is justified by the COVID-19 pandemic,[3] the BOP's failure to adequately address the pandemic, and Defendant's medical condition of "rightside heart failure" and "pulmonary hypertension" in his lungs.[4] (*Id.*).

---

[2]  To the extent Defendant alternatively requests a temporary release from custody during the COVID-19 pandemic, the Court lacks the authority to grant this relief. In other words, the Court's authority under § 3582(c)(1)(A) is limited to permanently reducing Defendant's sentence—it may not grant a temporary release from custody. *See United States v. Roberts*, __ F. Supp. 3d __, No. 18-CR-528-5 (JMF), 2020 WL 1700032, at *3-4 (S.D.N.Y. Apr. 8, 2020).

[3]  On March 13, 2020, President Trump declared a National Emergency concerning COVID-19. Proclamation No. 9994, 85 Fed. Reg. 15337 (Mar. 13, 2020). According to the World Health Organization's website, as of May 28, 2020, there were 5,556,679 confirmed cases of COVID-19 worldwide, with 351,866 confirmed deaths. *See Coronavirus (COVID-19)*, World Health Org., https://covid19.who.int/ (last visited May 28, 2020).

[4]  According to the Centers for Disease Control and Prevention ("CDC"), COVID-19 is "a new disease and there is limited information regarding risk factors for severe disease";

The Government filed a response in opposition on May 18, 2020. (Dkt. 44). The Government concedes that Defendant is designated by the BOP as "Care Level 4," the highest level of designation. (Dkt. 44 at 3). Moreover, the Government does not dispute that Defendant has "significant heart failure and pulmonary hypertension." (*Id*.). However, the Government suggests that these conditions are "successfully controlled through medication" (*id*.) and that Defendant is likely safer in prison than if released (*id*. at 11-12). The Government also goes on to detail the steps that FMC Devens is allegedly taking to control the spread of the virus within its walls. (*Id*. at 4-8). The Government's papers state that as of May 17, 2020, there were 10 confirmed cases of COVID-19 at FMC Devens among inmates. (*Id*. at 8).[5] However, eleven days later, on May 28, 2020, those numbers have skyrocketed to 26 confirmed cases of COVID-19 among inmates. *COVID-19: Coronavirus*, *Federal Bureau of Prisons*, https://www.bop.gov/coronavirus/ (follow "Full breakdown and additional details" hyperlink) (last visited May 28, 2020).

---

however, based on known information the CDC identifies the following individuals at "high-risk for severe illness from COVID-19": "People of all ages with underlying medical conditions, particularly if not well controlled" including individuals with "chronic lung disease" and people "who have serious heart conditions." *Frequently Asked Questions: Higher Risk*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/ 2019-ncov/faq.html#Higher-Risk (last visited May 28, 2020).

[5]  The Government also seems to contend that the mortality rate is better in prison than in Monroe County (Dkt. 44 at 8), but the statistics offered by the Government provide very little insight to the Court because they fail to take into account the respective age of the populations in each location. The CDC has made it clear that those "at high-risk for severe illness from COVID-19 are . . . [p]eople aged 65 years and older." *Frequently Asked Questions: Higher Risk*, *supra* note 3. Therefore, at a minimum, any comparison in the mortality rates must take into account the age of the respective populations, because by definition a higher-aged population will likely have a higher mortality rate.

In addition to the submissions of counsel, the United States Probation Office ("USPO") submitted a statement dated May 22, 2020, concerning its position on the pending motion, outlining statistics concerning the positive COVID-19 cases at FMC Devens, indicating that Defendant has had no disciplinary issues while in prison, confirming that Defendant is classified as Medical Care Level 4, and indicating that if the Court is inclined to release Defendant it is recommended that he be allowed to return to Maryland or Washington, D.C., where his family resides. The USPO did not take a position opposing Defendant's motion.

On May 27, 2020, with the permission of the Court, this District's Federal Public Defender's Office made a further submission in support of Defendant's motion. (Dkt. 47). On May 28, 2020, the Court conducted a status conference with counsel and the USPO, after which defense counsel provided further information in response to the Court's inquiries from FMC Devens. (Dkt. 49).

### III. LEGAL STANDARD AND ANALYSIS

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States v. Gotti*, __ F. Supp. 3d __, No. 02 CR 743-07 (CM), 2020 WL 497987, at *1 (S.D.N.Y. Jan. 15, 2020). The compassionate release statute, as amended by the First Step Act, is such a statutory exception, and provides as follows:

> The court may not modify a term of imprisonment once it has been imposed except that . . . the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of

> probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A). Relief is appropriate pursuant to § 3582(c)(1)(A) when the following conditions are met: (1) the exhaustion requirement of the statute is satisfied; (2) extraordinary and compelling reasons warrant a reduction of the prison sentence; (3) the factors set forth at 18 U.S.C. § 3553(a) support modification of the prison term; and (4) the reduction in the prison sentence is consistent with the Sentencing Commission's policy statements.

Here, the Government initially contended that Defendant's motion was not ripe for review because 30 days had not elapsed from the warden's receipt of Defendant's request and he failed to exhaust his administrative remedies. (Dkt. 44 at 8). However, at the appearance on May 28, 2020, the Government agreed that it was no longer advancing that argument, because more than 30 days had now elapsed. *See United States v. Wen*, ___ F. Supp. 3d ___, No. 6:17-CR-06173 EAW, 2020 WL 1845104, at *4-5 (W.D.N.Y. Apr. 13, 2020) (as a claim-processing rule, § 3582(c)(1)(A)'s exhaustion requirement is non-jurisdictional and thus subject to the doctrines of waiver and equitable estoppel). Specifically, Defendant submitted a request to the Warden at FMC Devens on April 24, 2020, and the request was denied on April 30, 2020. (Dkt. 44 at 2; Dkt. 44-1 at 2; Dkt. 44-2 at 2). Thus, as of the writing of this Decision and Order, the exhaustion requirements of the statute do not operate to bar the Court's consideration of the motion.

The Government also contends that Defendant has failed to demonstrate extraordinary and compelling reasons for a reduction in his sentence. (Dkt. 44 at 11-12). Pursuant to 28 U.S.C. § 994(t), Congress delegated authority to the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction." However, "this statement is at least partly anachronistic because it has not yet been updated to reflect the new procedural innovations of the First Step Act," which now provide a process for the Court to grant compassionate release separate and apart from any BOP application. *United States v. Ebbers*, ___ F. Supp. 3d ___, No. (S4) 02-CR-1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020).

Application Note 1 to U.S.S.G. § 1B1.13 enumerates the circumstances that can constitute extraordinary and compelling reasons. These include situations where a defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, Application Note 1(A)(ii)(I). Application Note 1 also includes a catch-all circumstance where "the Director of the Bureau of Prisons [determines that] there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in [the other subdivisions of the Application Note]." *Id*. at Application Note 1(D).

The anachronistic nature of Application Note 1 is demonstrated by the catch-all provision's sole reference to the BOP Director, but as the Court has previously held, it agrees with those other courts that have concluded that the discretion afforded the BOP

Director under that catch-all provision also extends to a court considering a compassionate release motion, consistent with the expansion of § 3582(c)(1)(A) relief under the First Step Act. *See United States v. Schafer*, No. 6:18-CR-06152 EAW, 2020 WL 2519726, at *4 (W.D.N.Y. May 18, 2020).

Here, Defendant's medical conditions are serious, he is not expected to recover from those conditions, and according to the most up-to-date CDC guidance, they cause Defendant to be at a heightened risk of severe illness from COVID-19. Moreover, FMC Devens appears to be fighting an outbreak within its facility, with the number of infected inmates exponentially increasing within the 11 days since the Government filed its response. History reflects that once the virus reaches a confined and dense population like a prison, it can explode and rapidly spread throughout the population. *See generally* Peter Eisler, et al., *Across U.S., COVID-19 Takes a Hidden Toll Behind Bars*, Reuters: Investigates (May 18, 2020, 11:00 AM), https://www.reuters.com/investigates/special-report/health-coronavirus-usa-jails/. The Government has presented no information to suggest an alternative explanation for this rapid increase in infected inmates. Prison settings present unique challenges in preventing the spread of any infectious disease. *See generally Brown v. Plata*, 563 U.S. 493, 519-20 (2011) (describing overcrowded California prison system as "breeding grounds for disease"). Those challenges appear particularly acute when dealing with COVID-19. As United States District Judge Paul W. Grimm aptly explained in *United States v. Martin*, __ F. Supp. 3d __, PWG-19-140-13, 2020 WL 1274857 (D. Md. Mar. 17, 2020):

> With no known effective treatment, and vaccines months (or more) away, public health officials have been left to urge the public to practice "social distancing," frequent (and thorough) hand washing, and avoidance of close contact with others (in increasingly more restrictive terms)—all of which are extremely difficult to implement in a detention facility.

*Id.* at *2. As a result, the BOP has faced well-documented challenges in stopping the spread of COVID-19 within certain of its facilities. *See Martinez-Brooks v. Easter*, No. 3:20-cv-00569 (MPS), 2020 WL 2405350, at *20-22 (D. Conn. May 12, 2020) (finding likelihood of success on Eighth Amendment claims based on conditions at FCI Danbury, where there was an active and serious outbreak of COVID-19, social distancing was not practical, and warden failed to consider transfers of medically vulnerable inmates in any meaningful way); *Wilson v. Williams*, __ F. Supp. 3d __, 2020 WL 1940882, at *2 (N.D. Ohio Apr. 22, 2020), *appeal filed*, No. 20-3447, 2020 WL 2120814 (6th Cir. Apr. 27, 2020) (outlining the ineffectiveness of the various procedures and protocols being implemented at FCI Elkton).

The Court acknowledges that earlier this month, a court rejected similar conclusions with respect to FMC Devens, *see Grinis v. Spaulding*, ___ F. Supp.3d ___, No. CV 20-10738-GAO, 2020 WL 2300313, at *2 (D. Mass. May 8, 2020) (finding petitioners failed to demonstrate likelihood of success on merits with respect to claims that conditions at FMC Devens violated Eighth Amendment rights), but the numbers are trending in the wrong direction at the facility. In fact, as noted in the Federal Public Defender's Office's submission, a motion for reconsideration has been filed in the *Grinis* case because of testimony provided by the warden at FMC Devens in another matter and because of the

trending of the data.  (Dkt. 47 at 7-8); *see* Motion for Reconsideration, *Grinis v. Spaulding*, No. 1:20-cv-10738-GAO, Dkt. 52 (May 26, 2020).

Based upon the Court's careful consideration of all the circumstances presented with this motion, it concludes that extraordinary and compelling reasons exist for a reduction in Defendant's sentence.  Specifically, the Court has considered Defendant's serious preexisting medical conditions, the positive trend of inmate virus contraction at FMC Devens, the increased risk of COVID-19 in prison settings, the short time left on Defendant's prison sentence (just over two months), and the unique circumstances surrounding Defendant's initial criminal conviction that ultimately led to his sentencing in this case.  Based on those circumstances, the Court concludes, like other courts have concluded, that Defendant has established extraordinary and compelling reasons for a reduction in his prison sentence. *See United States v. Daugerdas*, __ F. Supp. 3d __, No. 09cr581, 2020 WL 2097653, at *3 (S.D.N.Y. May 1, 2020) ("Other courts in this district have found that defendants' pre-existing medical conditions, combined with the increased risk of COVID-19 in prison settings, create 'extraordinary and compelling reasons' under the Policy Statement."); *United States v. Bess*, __ F. Supp. 3d __, No. 16-CR-156, 2020 WL 1940809, at *9 (W.D.N.Y. Apr. 22, 2020) ("[T]he grave risks that COVID-19 poses to individuals with the defendant's medical conditions, combined with the increased risk inmates face of contracting the disease at [Federal Correctional Complex] Butner, constitute 'extraordinary and compelling reasons for sentence reduction.'"); *United States v. Gileno*, __ F. Supp. 3d __, No. 3:19-CR-161-(VAB)-1, 2020 WL 1916773, at *3 (D. Conn. Apr. 20, 2020) ("Since the outbreak of the COVID-19 pandemic, numerous courts

within this Circuit have held that a defendant's pre-existing health conditions—respiratory conditions in particular—in combination with the increased risks of COVID-19 in prisons constitute 'extraordinary and compelling reasons' warranting relief."); *United States v. Hernandez*, __ F. Supp. 3d __, No. 18 CR. 834-04 (PAE), 2020 WL 1684062, at *3 (S.D.N.Y. Apr. 2, 2020) (holding COVID-19's heightened risk to incarcerated defendants with respiratory ailments such as asthma along with the crowded nature of the jail facility constituted extraordinary and compelling reasons); *United States v. Perez*, __ F. Supp. 3d __, No. 17 CR. 513-3 (AT), 2020 WL 1546422, at *4 (S.D.N.Y. Apr. 1, 2020) (holding defendant's medical condition, combined with the limited time remaining on his prison sentence and the high risk posed by COVID-19 in prison facility constituted extraordinary and compelling reasons for release); *United States v. Campagna*, __ F. Supp. 3d __, No. 16 CR. 78-01 (LGS), 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020) ("Defendant's compromised immune system, taken in concert with the COVID-19 public health crisis, constitutes an extraordinary and compelling reason to modify to Defendant's sentence on the grounds that he is suffering from a serious medical condition that substantially diminishes his ability to provide self-care within the environment of the [prison].").

Finally, even though the motion is not opposed on these grounds by the Government, the Court has considered the factors set forth at 18 U.S.C. § 3553(a), and concludes that those factors do not outweigh the extraordinary and compelling reasons warranting compassionate release. *See Ebbers*, 2020 WL 91399, at *7 ("The Court thus finds that, in considering the section 3553(a) factors, it should assess whether those factors outweigh the 'extraordinary and compelling reasons' warranting compassionate release,

particularly whether compassionate release would undermine the goals of the original sentence."). Rather, a reduction in Defendant's sentence in this case is not inconsistent with the § 3553(a) factors.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) (Dkt. 42) is GRANTED, and it is hereby ORDERED as follows:

1. Defendant's sentence is hereby reduced to TIME SERVED with NO supervised release to follow. Defendant is ordered to be IMMEDIATELY RELEASED. The Court directs the Bureau of Prisons to immediately commence the process of releasing Defendant from custody, and the United States Attorney's Office and United States Probation Office are directed to take all steps to communicate and facilitate Defendant's immediate release;

2. Following his release, Defendant is ordered to travel directly to the residence of his mother and sister at 2215 Columbia Place, Hyattsville, MD 20785, where he must self-quarantine for 14 days; and

3. During his travel to said location, Defendant should wear a face covering and use reasonable precautions to socially distance himself from others.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: May 29, 2020
       Rochester, New York